UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BEVERLY DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-1123-B |
| | § | |
| CITY OF DALLAS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER[1]

Before the Court is Defendant City of Dallas' Motion for Final Summary Judgment (doc.

45).  For the reasons stated below, the Motion is hereby **GRANTED in part** and **DENIED in**

**part** (doc. 45).

I.

BACKGROUND[2]

This action arises out of Plaintiff Beverly Davis' ("Davis") employment with Defendant

City of Dallas (the "City").  Davis began working for the City as a Personal Analyst in April

1982.  (Pl.'s Second Am. Compl.¶ 3.01.)  She was later promoted to her current position as

Assistant Director of Equipment and Building Services in April 1988.  (*Id*. at ¶ 3.02.)  In

---

[1]This Memorandum Opinion and Order is entered in conjunction with the Court's simultaneously entered Order on Defendant City of Dallas' Motion and Brief to Strike Portions of Plaintiff's Summary Judgment Evidence.

[2] The Court takes its factual account from those undisputed facts contained in Plaintiff's Second Amended Complaint (doc. 33).  Any disputed facts are identified as the allegations of a particular party.

December 2004, Jack Ireland ("Ireland") became the Director of Equipment and Building Services directly over Davis.  (*Id.* at ¶ 3.03.)

In April 2005, Ireland took part in implementing the City's new performance review system by conducting reviews of the employees under his supervision, including Davis.  (*Id.* at ¶ 3.04.)  The performance review system featured a goal of achieving a "bell curve" in its results.  (*Id.*)  Ireland gave Davis a rating of "Has Potential" under this system.  (*Id.*)  Davis alleges she was entitled to a higher rating and that the "has potential" rating subjected her to a lower salary increase and reduced retirement.  (*Id.*)

Accordingly, Davis appealed her performance rating to Assistant City Manager Jill Jordan ("Jordan").  (*Id.* at ¶ 3.05.)  As part of this appeal, Davis attended a hearing with Jordan in May 2005.  (*Id.* at ¶ 3.06.)  At the hearing, Jordan noted she agreed with Davis' performance rating because Davis' division had not done enough to promote the office recycling program.  (*Id.*)  Subsequently, Jordan upheld the performance rating and informed Davis of her right to appeal to City Manager Mary Suhm ("Suhm").  (*Id.* at ¶ 3.07.)

Davis alleges she subsequently appealed Jordan's decision to Suhm.  (*Id.* at ¶ 3.08.)  Davis further alleges she made several unsuccessful attempts to contact Suhm regarding this appeal.  (*Id.* at ¶¶ 3.09, 3.12.)

In January 2006, Ireland gave Davis a "Fully Successful" performance rating for the 2005 performance review period.  (*Id.* at ¶ 3.13.)  Davis alleges she was entitled to a "Superior" rating, and that the lower rating subjected her to a lower salary increase and reduced retirement.  (*Id.* at ¶ 3.13.)

On February 10, 2006, Davis filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging the City had discriminated against her in regard to her first performance rating.  (*Id.* at ¶ 3.14.)  Following this filing, Davis alleges she was subjected to poor treatment including being accused of intentionally missing a meeting and being publicly harassed by Suhm at a briefing meeting.  (*Id.* at ¶¶ 3.15-3.18.)

In October 2006, Ireland gave Davis a "Fully Successful" performance rating for the 2005/2006 review period.  (*Id.* at ¶ 3.20.)  Davis appealed the rating to Jordan.  (*Id.* at 3.21.)  At the appeal hearing, Davis noted she felt her performance review had been handled in a discriminatory manner and requested her rating be changed to "Superior."  (*Id.* at ¶ 3.22.)  Following the hearing, Jordan issued Davis a letter upholding the "Fully Successful" rating and informing Davis she had no other appeal rights.  (*Id.* at ¶ 3.23.)  Despite this lack of appeal rights, Davis was later offered a meeting with Suhm because of Davis' status as a long term employee.  (*Id.* at ¶ 3.26.)  Following the meeting, Suhm upheld the performance rating for the 2005/2006 review period.  (*Id.* at ¶¶ 3.28, 3.31.)

On March 23, 2007, Davis filed a second complaint with the EEOC alleging the City had retaliated against her due to her opposition to the performance review system.  (*Id.* at ¶ 3.27.)  On August 8, 2007, Davis received a Letter of Determination from the EEOC finding discrimination had occurred.  (*Id.* at ¶ 3.32.)  Davis alleges she subsequently sent a letter to Suhm, copying the City Attorney, Assistant City Manager and Human Resources Director expressing concern that Ireland was administering the performance evaluation system in a discriminatory manner.  (*Id.* at ¶ 3.33.)  Further, Davis alleges she received a Notice of Conciliation Failure from the EEOC on February 12, 2008.  (*Id.* at ¶ 3.36.)

In early 2008, Ireland held a meeting with the executive staff and Director of Human Resources in which he notified the group of a staff reorganization effectively moving the Design and Construction division from Davis' supervision.  (*Id.* at ¶ 3.34.)

On January 23, 2008, Ireland gave Davis a "Fully Successful" performance rating.  (*Id.* at ¶ 3.35.)  Unhappy with the rating again, Davis attended an appeal hearing with David Brown ("Brown"), Interim Assistant City Manager, on February 21, 2008.  (*Id.* at ¶ 3.37.)  Brown upheld the performance rating, and Davis attended an additional appeal hearing with Suhm. (*Id.* at ¶ 3.38.)

Davis filed her Second Amended Complaint on April 13, 2009.  In the Second Amended Complaint, Davis alleges the City engaged in race discrimination in violation of Title VII, 42 U.S.C. 2000e, *et seq.*  (*Id.* at ¶¶ 4.01-4.09.)  Specifically, Davis alleges the City harassed her, created a hostile work environment, discriminated against her and retaliated against her.  (*Id.* at ¶¶ 4.05, 5.01-5.06.)  Davis further alleges the City's employee performance review practices had a discriminatory "disparate impact" on Davis and the City's other African-American employees. (*Id.* at ¶ 4.08.)  Finally, Davis alleges the City engaged in discrimination in violation of 42 U.S.C. § 1981.  (*Id.* at ¶¶ 6.01-6.04.)

The City filed the instant Motion for Summary Judgment on September 24, 2009. Having considered the parties briefing and the relevant law, the Court now turns to the merits of its decision.

## II.

## LEGAL STANDARD

### A. Summary Judgment

The purpose of summary judgment is "to enable a party who believes there is no genuine dispute as to a separate fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Accordingly, Federal Rule of Civil Procedure 56© provides summary judgment is appropriate "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The summary judgment movant bears the burden to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id.*

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be

resolved in favor of the non-movant. *Little*, 37 F.3d at 1075. However, in making such a showing, the non-movant must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zentih Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

**B.  Title VII of the Civil Rights Act of 1964**

**1. Discrimination Claims Under Title VII**

Title VII provides it is unlawful for an employer

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). The plaintiff in a Title VII action carries the initial burden of establishing a prima facie case of racial discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a prima facie case, a plaintiff must show "(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class, under nearly identical circumstances. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *see McDonnell Douglas*, 411 U.S. at 802.

Notably, in the context of establishing a prima facie case, "an adverse employment action means an ultimate employment decision, such as hiring, granting leave, discharging, promoting,

and compensating." *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 (5th Cir. 2003). Thus, an adverse employment action must "have more than 'mere tangential effect on a possible future employment decision.'" *Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001) (quoting *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000)).

Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to produce a legitimate nondiscriminatory reason for the adverse employment decision. *Lee*, 574 F.3d at 259. Upon such a showing, the burden shifts back to the plaintiff to "demonstrate that the employer's explanation is merely a pretext for racial bias." *Id.*

### 2. Disparate Impact Claims Under Title VII

Title VII additionally outlaws those employment practices that cause a disparate impact on the basis of race, color, religion, sex, or national original. 42 U.S.C. § 2000e-2(k). "To establish a prima facie case of discrimination under a disparate-impact theory, a plaintiff must show: (1) an identifiable, facially neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two." *McClain v. Lufkin Indus.*, 519 F.3d 264, 275-76 (5th Cir. 2008) (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)). If a plaintiff can show that the elements of an employer's decision making process are incapable of separation for analysis, the decision making process can be analyzed in whole as an employment practice. *Id*; 42 U.S.C. § 2000e-2(k)(1)(B)(I). Such an allowance addresses those instances in which an employer's system uses "tightly integrated and overlapping criteria" so as to make it difficult to determine which particular part of the system is responsible for the alleged discrimination. *Munoz v. Orr*, 200 F.3d 291, 304 (5th Cir. 2000).

An employer may counter a prima facie disparate impact claim by asserting that such employment practices are business necessities or legitimately related to the operation of the employer's business.  *Watson*, 487 U.S. at 997.  However, the ultimate burden of proof in asserting a disparate impact claim under Title VII remains with the plaintiff at all times.  *Id.* Accordingly, when a plaintiff has established a prima facie case of disparate impact, and the employer has produced evidence demonstrating the legitimate business needs warranting its employment practices, the plaintiff must show the availability of alternative practices that do not produce a similarly undesirable racial effect but meet the employer's stated business necessities. *Id.* at 998(quoting *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975)).

### 3. Retaliation Claims Under Title VII

Title VII provides

> It shall be an unlawful employment practice for an employer to discriminate
> against any of his employees or applicants for employment . . . because [the
> employee] has opposed any practice made an unlawful employment practice by
> this subchapter, or because he has made a charge, testified, assisted, or
> participated in any manner in an investigation, proceeding, or hearing under this
> subchapter.

42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation under Title VII, the plaintiff must establish that "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action."  *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).

For an employment action to qualify as adverse under the anti-retaliation provision, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"" *Burlington N. and Santa Fe R.R. Co. v. White*, 548 U.S. 53, 67-68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (quoting *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005))). Context to a particular employee's situation remains an important factor in determining whether an action qualifies as materially adverse. *Id*. at 69. Further, the proximity in time between an employee's protected activity and any adverse action may provide the causal link needed to establish a prima facie case. *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

Upon establishing a prima facie case, the burden of proof shifts to the employer to offer a legitimate, non-retaliatory reason for the employment action. *McCoy*, 492 F.3d at 556-57. If such a reason is offered, the burden shifts back to the plaintiff to prove the proffered reason is mere pretext to retaliatory efforts. *Id*.

### 4. Harassment and Hostile Work Environment Claims Under Title VII

A plaintiff may establish a prima facie case of racial harassment and hostile work environment under Title VII upon showing "(1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term condition or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353-

54 (5th Cir. 2001). For harassment to affect a term, condition, or privilege of employment it must be "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999). To determine whether this standard is met, a court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

### 5. Exhaustion of Administrative Remedies

Title VII requires employees to exhaust administrative remedies prior to filing suit through the filing of an administrative charge with the EEOC. *McClain*, 519 F.3d at 273; *see* 42 U.S.C. § 2000e-5(e). Such a charge ultimately limits the scope of any resulting Title VII Complaint. *Id.* However, the scope of a case will not be limited to the four corners of the exact charge filed with the EEOC. *Young v. City of Houston*, 906 F.2d 177, 180 (5th Cir. 1990). Rather, "[t]he scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000).

### C. Discrimination Claims Under 42 U.S.C. § 1981

Section 1981 provides

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall

be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

41 U.S.C. § 1981(a).  Notably, a plaintiff wishing to assert a cause of action against a state actor for a violation of their rights under § 1981 must do so under 42 U.S.C. § 1983.  *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 463 (5th Cir. 2001); *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 731 (1989).

## III.

## ANALYSIS

The City has moved for summary judgment on each of Davis' claims.  Accordingly, the Court will consider each claim in turn after preliminarily addressing whether Davis has exhausted her administrative remedies.

### A.  Davis' Exhaustion of Administrative Remedies

The City argues Davis has not exhausted her administrative remedies with regard to her claims of harassment and hostile work environment.  (City's Br. In Supp. Of Its Mot. For Final Summ. J. 20.)  Similarly, the City contends Davis has failed to exhaust her administrative remedies with regard to any claim of race discrimination pertaining to a review period beyond December 1, 2004 through March 31, 2005 ("First Review Period").  (*Id.* at 21.)  The City contends both types of claims exceed the scope of claims reasonably expected to grow out of the charges filed by Davis with the EEOC.  (*Id.* at 21-22.)

Davis counters that she has exhausted administrative remedies on all her claims.  (Pl.'s Br. In Opp'n To Summ. J. 20.)  Davis notes subsequent performance reviews to the First Review

Period would clearly fall within the scope of the EEOC's investigation into Davis' first charge. (*Id*. at 21.)  Such subsequent reviews, which were appealed by Davis, were pertinent to an investigation as to whether discrimination occurred.  (*Id*.)  Further, Davis claims her harassment and hostile work environment claims are expressly contained in her second charge and could be expected to grow out of the EEOC's investigation.  (*Id*.)

Davis' first charge of discrimination filed with the EEOC alleges Davis received a performance evaluation that did not accurately reflect her performance between April 1, 2004 and March 31, 2005.  (*See* Def. City of Dallas' Appendix in Supp. Of Its Mot for Final Summ. J. DAPP 270.)  In the charge, Davis indicates she feels she has been discriminated against because of her race.  (*Id*.)  Davis' second charge of discrimination filed with the EEOC alleges Davis has been subjected to retaliation, including the imposition of a hostile work environment, because of her opposition to unlawful employment practices.  (*Id*. at DAPP 273-273b.)  A two page list detailing the alleged retaliatory actions is additionally attached to Davis' second charge.  (*Id*. at DAPP 273a-273b.)  One example cited in this list is a subsequent performance review rating Davis felt was inaccurate.  (*Id*. at 273b.)

In reviewing these charges, the Court finds, under the facts at hand, that it is reasonable to expect a harassment and hostile work environment claim to grow from Davis' charge alleging retaliatory behavior.  This charge specifically alleges the imposition of a hostile work environment and includes a two-page attachment detailing actions that could constitute harassment and/or create a hostile work environment.  The Court further finds it is reasonable to expect the EEOC's investigation to extend to performance ratings beyond the First Review

Period.  Not only does Davis' first charge specifically allege discrimination in relation to a

performance rating, but Davis' second charge alleges she was subsequently given lower ratings in

retaliation.  Thus, the scope of the EEOC's investigation could reasonably extend to Davis'

ratings received in subsequent review periods.  Accordingly, the Court finds Davis has exhausted

her administrative remedies with regard to all her claims in this action.

### B. Davis' Intentional Discrimination Claim Under Title VII

The City argues it is entitled to summary judgment on Davis' intentional race

discrimination claim.  (City's Br. In Supp. Of its Mot. For Final Summ. J. 19.)  First, the City

contends Davis lacks proof she suffered an adverse employment action because a lesser pay

increase does not constitute an ultimate employment action under Title VII.  (*Id.* at 23-27 (citing

*Cardenas-Garcia v. Tex. Tech Univ.*, 118 F. App'x 793, 793-94 (5th Cir. 2004)).)  Assuming

*arguendo* such actions do qualify as ultimate employment actions under Title VII, the City

contends it had legitimate, non-discriminatory business reasons for the performance rating given

to Davis.  (*Id.* at 27-28.)  Specifically, the City notes Ireland gave Davis a "Has Potential" rating

because he thought the department was not fully successful in the specific areas for which Davis

was responsible.  (*Id.*)  Additionally, the City notes Ireland gave himself a "Has Potential" rating.

(*Id.*)  Finally, the City argues Davis cannot show any of the challenged acts to be pretextual.  (*Id.*

at 30.)

Davis contends she has suffered an adverse employment action under Title VII.  (Pl.'s Br.

In Opp'n to Summ. J. 22-23.)  To support this contention, Davis notes the lower performance

rating subjected her to a reduced pay increase and reduced retirement.  (*Id.*)  Davis additionally

argues the City's legitimate non-discriminatory business reasons for Davis' performance rating are misleading.  (*Id.* at 25.)  Davis contends the rating Ireland gave himself is irrelevant, whereas the higher ratings he gave to other employees similarly situated to Davis evidence his discriminatory intent.  (*Id.* at 23-26.)

Adverse employment actions include those ultimate employment decisions affecting compensation.  *See Foley*, 355 F.3d at 340.   Notably, compensation does not have to be reduced to be adversely affected.  *See Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 193 (5th Cir. 2001) ("It is illogical to construe Title VII as prohibiting discriminatory decreases in pay, but permitting discriminatory denials of pay increases.")  Davis alleges her low performance rating caused her to receive a lesser salary increase than she would have had under a higher performance rating. Because the performance rating affected Davis' compensation, it could qualify as an adverse employment action.  Accordingly, it appears material issues of fact remain regarding the adverse employment action.

The Court notes the parties have presented conflicting arguments and evidence regarding Davis' ability to establish a prima facie case of discrimination.  In light of these remaining fact issues, the Court finds the City has failed to meet its burden to show there are no genuine issues of material fact and that it is entitled to judgment as a matter of law as to Davis' claims of race discrimination under Title VII.  Accordingly, the Court finds the City's Motion for Summary Judgment should be **DENIED** to the extent it seeks summary judgment as to Davis' intentional discrimination claims under Title VII.

### C.  Davis' Disparate Impact Claim Under Title VII

The City contends it is entitled to summary judgment on Davis' disparate impact claim under Title VII.  (City's Br. In Supp. Of Its Mot. For Final Summ. J. 3.)  The City preliminarily argues Davis has failed to adequately plead a disparate impact claim.  (*Id.* at 4.)  Specifically, Davis has failed to allege any specific employment practices causing the alleged disparate impact. (*Id.*)  Accordingly, the City argues Davis' disparate impact claim should be dismissed under Fed. R. Civ. P. 12(b)(6).  (*Id.*)  Assuming pleading sufficiency *arguendo*, the City contends Davis cannot establish a prima facie case of disparate impact discrimination.  (*Id.* 5-14.)  First, the statistical evidence offered by Davis to support her claim is flawed, incomplete and unreliable. (*Id.* at 7-12.)  Further, Davis has provided no evidence to show a causal relationship between the alleged disparate impact and the performance review system.  (*Id.* at 12-14.)  Finally, the City contends its performance review system is job-related, consistent with the business necessity of effectively evaluating the City's employees, and a system for which Davis has offered no available alternative method of conducting performance evaluations.  (*Id.* at 14-19.)

Davis argues she has satisfied the relevant pleading standard by identifying the City's performance review process as a facially neutral policy and the City's goal to achieve a "bell curve" as a specific employment practice thereunder.  (Pl.'s Br. In Opp'n To Summ. J. 13.)  Davis further contends she is able to establish a prima facie case of disparate impact discrimination. (*Id.* at 14.)  Davis notes she has provided ample evidence of the performance review system's resulting disparate impact, including expert testimony.  (*Id.* at 14-16.)  Further, Davis notes evidence of causation can be found in the City's own internal review documents and the

interplay of subjective versus objective components in the City's performance review system. (*Id.* at 16-19.) Davis argues the City has not provided an adequate business necessity justification for the employment practice in question because it has failed to justify why the application of a bell curve is necessary. (*Id.* at 19.) Finally, Davis contends she has adequately offered an alternative review method, namely eliminating the bell curve requirement and subjective manipulations from the performance review system. (*Id.* at 20.)

The Court begins its analysis on this point by determining whether Davis' disparate impact claim has been adequately pleaded. Federal Rule of Civil Procedure 8(a)(2) provides that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). However, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(quoting *Twombly*, 550 U.S. at 555). Therefore, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Id.* (quoting *Twombly*, 550 U.S. at 570).

A plaintiff may establish a prima facie case of disparate impact by showing an identifiable, facially neutral personnel policy or practice, a disparate effect on members of a protected class,

and a causal connection between the two. *See McClain,* 519 F.3d at 275-76.  In light of this standard, the Court finds Davis has adequately plead a claim for disparate impact.  Davis' pleadings provide the City adequate notice of all the elements of a prima facie case of disparate impact discrimination.  Specifically, in her pleadings, Davis identifies the City's performance review system and its required bell curve application as a facially neutral policy causing a disparate impact on African-Americans.  (*See* Pl.'s Sec. Am. Compl. ¶¶ 3.04, 4.08-4.09.)  These facts, accepted as true, establish a plausible claim for disparate impact.  As such, the Court **DENIES** the City's request to dismiss Davis' disparate impact claims under Fed. R. Civ. P. 12(b)(6).

Looking further at Davis' disparate impact claim, the parties have offered contrasting arguments and evidence as to the sufficiency of Davis' statistical evidence, whether the City's performance review system in fact caused any disparate impact, the adequacy of the City's business necessity defense, and the alleged alternative offered by Davis.  Thus, the City has failed to meet its burden to show there are no issues of material fact and that it is entitled to judgment as a matter of law as to Davis' disparate impact claims.  Accordingly, the City's Motion is **DENIED** to the extent it seeks summary judgment on Davis' disparate impact claims.

### D.  Davis' Retaliation Claim Under Title VII

The City argues it is entitled to summary judgment on Davis' retaliation claim under Title VII.  (City's Br. In Supp. Of Its Mot. For Final Summ. J. 30.)  The City contends the actions allegedly experienced by Davis are not materially adverse as a matter of law.  (*Id.* 36-43.)  Further, the City argues Davis possesses no evidence showing a causal connection between the

filing of her EEOC charge and the alleged retaliatory acts. (*Id*.) Finally, the City argues it has articulated legitimate non-retaliatory business reasons for each of the alleged acts , none of which Davis can prove to be pretextual. (*Id*. at 43.)

Davis contends she has cited multiple actions qualifying as materially adverse including losing her supervisory responsibilities over her co-workers, being accused of intentionally missing a meeting, and being belittled in front of peers at a meeting. (Pl.'s Br. In Opp'n To Summ. J. 27-28.) Further, Davis notes the close proximity in time between Davis' protected activity and these actions establishes a causal connections. (*Id*. at 11.) Accordingly, Davis argues the City is not entitled to summary judgment on the retaliation claims. (*Id*.)

The Court examines whether the actions allegedly experienced by Davis might have dissuaded a reasonable employee from making or supporting a charge of discrimination. *See Burlington Northern*, 548 U.S. at 67-68. A reasonable employee could have been dissuaded from making a charge of discrimination if she felt her supervisory responsibilities might be reduced or that she might be subject to public criticism at the hands of a superior. Thus, the actions cited by Davis could constitute adverse actions under Title VII. Accordingly, the Court finds material issues of fact remain on this issue.

Further, the parties have a material dispute over the law and evidence as to whether Davis can establish a prima facie case of retaliation. As such, the Court finds the City has not met its burden to show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on Davis' retaliation claim. Accordingly, the City's Motion is **DENIED** to the extent it seeks summary judgment on Davis' retaliation claims under Title VII.

- 18 -

### E.  Davis' Harassment and Hostile Work Environment Claims Under Title VII

The City argues it is entitled to summary judgment as to Davis' harassment and hostile work environment claim.  (City's Br. In Supp. Of its Mot. For Final Summ. J. 46.)  The City contends Davis has offered no evidence supporting this particular claim.  (*Id.* at 46-47.)

Davis contends she has offered sufficient evidence supporting the harassment and hostile work environment claim to survive summary judgment.  (Pl.'s Br. In Opp'n To Summ. J. 30.) Specifically, Davis notes the subjective hostility experienced by Davis, Suhm's treatment of Davis at a meeting, and other small actions of hostility have been established through Davis' own testimony.  (*Id.*)

The Court finds Davis, through her own testimony, has offered some evidence supporting her harassment and hostile work environment claim under Title VII.  Thus, the city has failed to meet its burden to show to show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on Davis' harassment and hostile work environment claim.  Accordingly, the City's Motion is **DENIED** to the extent it seeks summary judgment on Davis' harassment and hostile work environment claims.

### F.  Davis' Discrimination Claims under 42 U.S.C. § 1981

The City argues it is entitled to summary judgment on Davis' Discrimination Claims under 42 U.S.C. § 1981.  (City's Br. In Supp. Of Its Mot. For Summ. J. 44.)   The City notes because it is a state actor, any § 1981 claims brought against it must be asserted under 42 U.S.C. § 1983.  (*Id.*)  Thus, because Davis has improperly asserted her claim under § 1981, the claim must be dismissed.  (*Id.*)

Davis argues she has properly pleaded her § 1981 claim.  (Pl.'s Br. In Opp'n To Summ. J. 31.)  However, to the extent Davis has improperly pleaded such a claim, Davis seeks leave of the Court to amend her pleadings.  (*Id.*)

A plaintiff wishing to make a claim against a state actor for a violation of their rights under § 1981 must do so under 42 U.S.C. § 1983.  *See Oden*, 246 F.3d at 463; *Jett*, 491 U.S. at 731.  Because the City is a state actor, Davis must plead any § 1981 claims against it through § 1983.  Davis has therefore improperly pleaded her discrimination claim under 42 U.S.C. § 1981. Accordingly, the Court turns its analysis to whether leave to replead should be granted.

In determining whether an untimely motion to amend pleadings should be granted, the Court must consider the explanation for the failure to timely move for amendment, the importance of the amendment, any potential prejudice in allowing the amendment, and the availability of a continuance to cure such prejudice.  *S&W Enters., L.L.C. v. SouthTrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003); *see* Fed. R. Civ. P. 16(b).  Davis' motion was made approximately one year after the initial pleading amendment deadline set by the Court.  (*See* Scheduling Order (doc. 14).)  Davis has previously amended her pleadings twice.  As to the currently requested amendment, Davis has offered no explanation for not filing a timely motion. To allow such an amendment this close to the trial date would not only unfairly prejudice the City, but work against the Court's interest in judicial efficiency.  Accordingly, the Court **DENIES** Davis' request for leave to amend her pleadings and **GRANTS** the City's Motion to the extent it seeks summary judgment on Davis' claim under 42 U.S.C. § 1981.

IV.

CONCLUSION

Davis has properly exhausted her administrative remedies with regard to all her claims.

Material issues of fact remain as to all Davis' claims brought under Title VII.  Accordingly, the

City's Motion for Summary Judgment is **DENIED** to the extent it seeks summary judgment as to

any of the Title VII claims.  However, Davis has failed to adequately plead her claim under 42

U.S.C.  § 1981.  The Court does not find an amendment of Davis' pleadings is warranted.  Thus,

the City's Motion for Summary Judgment is **GRANTED** to the extent it seeks summary

judgment on Davis' claim under § 1981.  Accordingly, the Court finds the City's Motion should

be and hereby is **GRANTED in part** and **DENIED in part** (doc. 45).

SO ORDERED.

DATED January 25, 2010

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 21 -